# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIRST CIRCUIT

## APPEAL NO. 12-1759

UNITED STATES OF AMERICA,

APPELLEE,

v.

ANGEL LUIS PIZARRO, A.K.A. WEE,

APPELLANT

_____

## APPELLANT'S BRIEF

_____

**LAW OFFICES OF**
**MAURICIO HERNANDEZ ARROYO, ESQ.**
USCA-1st Cir. No. 42462
Attorney for Appellant
818 Avenue Hostos, Suite B
Playa de Ponce, Puerto Rico 00716.
(787) 597-4815
e-mail: lawofficesmhernandez@gmail.com

-1-

# TABLE OF CONTENTS

1.      TABLE OF AUTHORITIES  ........................................................  i

2.      STATEMENT OF JURISDICTION  ...........................................  7

3.      STATEMENT OF THE ISSUES…………………………...………..8

4.      STATEMENT OF THE CASE…………………………………….…....8

5.      STATEMENT OF THE FACTS…………..…………………………12

6.      SUMMARY OF THE LEGAL ARGUMENT…………………………..29

7.      LEGAL ARGUMENT……………………………………………..30

8.      CONCLUSION………………………………………………68

9.       CERTIFICATE OF SERVICE…………..……………………… ..68

10.     CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. RULE 32(a)

        WITH TYPE FACE AND LENGTH LIMITATION……………………...69

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000)* ……………….31

*Barbour v. United States,* —U.S.— 125 S.Ct. 992 (2005)……….…..……..46

*Blakely v. Washington, 125 S. Ct. 2531 (2004)*…………………….……..29,31

*Deman v. United States,* 298 F 3D 34 (1ˢᵗ. Cir. 2002)…………...…………..45

*Edwards v. United States,* 523 U.S. 511, 513 (1998*)*..........................................41

*Edwards v. United States*, 523 U.S. 511 (1998)……………………………..…59

*Iannelli v. United States, 420 U.S. 770, 777 (1975)*……………………...........42

*Koon v. United States* 116 S.Ct. 2035 (1996)……………………………...63,64

*McConnell v Sec,* 540 U.S.93, 180, 124 S. Ct. 619 (2003) ………..…………38

*Molzof v. United States,* 502 U.S. 301, 307-308 (1992)………………………..42

*United States v. Acosta-Luna*, 2005 WL 1415565 (10ᵗʰ Cir. June 17, 2005)…….66

*United States v. Alegria,* 192 F.3d 179, 191 (1st Cir. 1999)……………..…….48

*United States v. Apprendi*, 530 U.S. 466, 490 (2000)…………………..…...31,34

*United States v. Barone, (1ˢᵗ. Cir. 1997)*………………………………...…………..32

*United States v. Barton,* 76 F.3d 449 (2d Cir. 1996)……………………………64

*United States v. Bradstreet* 207 F.3d 76, (1 st Cir. 2000)………………………...64

*United States v. Brock,* 108 F.3d31 (4th Cir. 1997)………………..…………64

*United States v. Carty,* 246 F.3d 191 (2dCir. 2001)………………..…………63

*United States v Casas (Casa II) 425 F.3d 23, at 59 (1ˢᵗCir. 2005*)..............11,33,48

*United States v. Cawthorn*, 419 F.3d 793, 802 (8th Cir. 2005)……………..…66

*United States v. Collins, 60 F. 3d 4, 7 (1st. 1995)*…………………..……………32

*United States v. Cordoba-Murgas, 422 F.3d 65, 68 (2d. Cir. 2005)*……………35

*United States v. Core,* 125 F.3d 74 (2d Cir. 1996)……………………..……………64

*U.S. v. Correy*, 570 F.3d 373 (1st Cir. 2009*)*……………..……………..…..……11,32,48

*United States v. Dyce,* 975 F. Supp. 17 (D.D.C. 1997)…………..……………….....64

*United States v. Francis,* 129 F.Supp.2d 612, 616 (S.D.N.Y. 2001)……………..63

*United States v. Charmer Industries, Inc.,* 711 F.2d 1164, 1170(2dCir. 1983)…52

*United States. v. Gomez-Rosario, 418 F,3d 90, 109 (1st. Cir. 2005)*.……..............33

*U.S. v. Hernandez-Santiago*, 92 F.3d 97, 101, n.1 (2nd Cir. 1996)………..…59,63

*United States v. Knight* , 342 F.3D 697, 709-12 (7th. Cir. 2003)………………..46

*United States v. Lagasse,* 87F.3d 18 (l[st]Cir. 1996)……………………………59,67

*United States v. Marrero-Ortiz,* 160 F.3d 768(1 [st]Cir. 1998)………..………..59,67

*United States v. Maier,* 975 F.2d 944 (2d Cir. 1992)……………..………..………64

*U. S. v. Moreno,181 F.3d 2006, 213-216 & n.4(2nd Cir. 1999)*    ……..……...11,42

*United States v. Nelson-Rodriguez,* 319 F, 3d 12, 45 (1st. Cir. 2003)…...………..38

*United States v. Pepper*, 562 U.S.        (2011)……………………………………30,61

*United States v. Perez-Ruiz, 421 F.3d 11, 14 (1st. Cir. 2005)*……………...……34

*United States v. Pineda,* 981 F.2d569, 573 (1st Cir. 1992)………………..…57,58,67

*United States v. Phillips,* 349 F3d 138, 141-43 (3d. Cir. 2003)……………........46

*United States v. Robinson,* 433 F,3d 31, 35 (1st Cir. 2006)………………………66

*United v. Sally,* 116 F.3d 76 (3d Cir. 1997)……………………………..…61,64

*United States v. Saxena,* 229 F.3d 1, 5 n.l (1st Cir. 2000)……………..……….51,52

*United States    v. Shabani, 513 U.S. 10 (1994)*…………………………............42

*United States v. Soto-Beniquez*, 350 F3d 131, 160 (1st Cir. 2003)………….…38,44

*United States v. Soto Benitez(II),* 356 F3d 1, 48(1st. Cir. 2004)……………........44

*Unites States v. Stiger,* 413 F 3d 1185 (10th Cir. 2005)……………………….…46

*United States v. Sutton,* 973 F. Supp. 488, 491-494 (D.N.J. 1997)…………….59

*United States v. Thomas, 274 F.3d 655, 660 (2d. Cir. 20*01)……………..….........35

*United States v. Turner*, 319 F.3d 716, 722-23 (5th. Cir 2003)……………….46,47

*Whitfield v. United States,* 543 U.S. 209, 125 S. Ct. 687, 690-691 (2005)……..42

## STATUTES

§2D1.1 (b)( 1)………………………………………………………….29,58,67

18 U.S.C. section 3553(a)(2)……………………………………………..65

18 U.S.C. section 3553(a)………………………………………………61,65

18 U.S.C. section 3585(a)…………………………………………………62

18 U.S.C. section 3624(b)…………………………………………………62

21 U.S.C. §371……………………………………………………….…42

21 U.S.C. §841 (a)(1)…………………………………………………...33,40

21 U.S.C. §841 (b)(1)……………………………………………….35,36,37,38

21 U.S.C. §841 (b)(1)(a)(d)…………………………………………...38,40

21 U.S.C §841(a)(1)……………………………............7,8,9,32,33,37,38,40,41

21 U.S.C §841(b)(1)………………………32,33,34,36,37,40,41,43,44,46,57,60

21 U.S.C §841(b)(1)(A)-(D)     ………………………..………….…7,8,9, 35

21 U.S.C. §841(b)(1)(A), C…………………………………………...37

21 U.S.C. §841(b)(1)(C)…………………………………………………37

18 U.S.C. §2………………………………………………………….7,9

21U.S.C §842 (a)(1)……………………………………………….…...32

21U.S.C.§846…………………………………………….7,32,38,40,41,42

21 U.S.C. §924 (c)……………………………………………………58

28 U.S.C.§1291 ....................................................................  7

21 U.S.C. §846 …………………………………………….……37

21 U. S. C. § 848 (e) (1)………………………………………………9

21 U.S.C. §924(c)………………………………...……………………55,67

## STATEMENT OF JURISDICTION

Defendant Angel Luis Pizarro-Morales ("Pizarro/Defendant-Appellant") appeals as of right, pursuant to 28 U.S.C.§1291, from a final judgment of the United States District Court, District of Puerto Rico (Hon. Gustavo Gelpi), dated May 15, 2012, convicting him of Conspiracy to Possess with intent to distribute over 150 kilograms of cocaine, in violation of 21 U.S.C. § 846 and unlawful possession with intent to distribute approximately 81 kilograms of cocaine and aiding and abetting in violation of 21 U.S.C. §841 (a)(1) and 18 U.S.C. §2.

On May 15, 2012, the defendant was sentenced to a term of imprisonment of 280 months and five years of supervised release.   D.E. 2326.   See Appellant's Appendix (hereinafter referred to as A.A.) Judgment at pages 1-5.   See also Minutes of May 15, 2012 Sentencing Hearing.   A.A. at p.6.

The district court had subject matter jurisdiction pursuant to 18 U.S.C. §3231.   Notice of Appeal was filed on May 29, 2002, pursuant to Federal Rule of Appellate Procedure 4(b). D.E. 3283.   A.A. pages7-8.

## ISSUES PRESENTED FOR REVIEW

**POINT I.**

> **WHETHER THE COURT COMMITTED ERROR IN ATRIBUTED THE QUANTITY AND TYPE OF DRUGS TO APPELLANT**

**POINT II.**

> **WHETHER PREJUDICIAL ERRORS WERE COMMITTED BY THE SENTENCING COURT**

## STATEMENT OF THE CASE

The Indictment alleges activities associated with a conspiracy that began in or about September 1992 and ended in or about 1995. Pizarro is specifically alleged to have participated from September 1992 until July 1994. D.E. 2. He was indicted on December 13, 1995.

Pizarro was charged in a six count superseding indictment along with 60 co-defendants. Count One of the indictment charged all defendants with conspiracy to possess with intent to distribute heroin and cocaine, commencing in or about September 1992 and continuing until March of 1995 in violation of 21 U.S.C. §841(a)(1) and 846. It is noteworthy that while the Indictment describes two types of drugs, heroin and cocaine, and approximate amounts of 1,400 grams

of heroin and 9,445 kilograms of cocaine, it does not specify the quantity and penalty subsection(s) applicable to the violation(s) charged.    D.E. 2.

Pizarro was also named in Count Two of the indictment which charged possession with intent to distribute 81 kilograms of cocaine between March 12 and March 23, 1994 in violation of 21 U.S.C. §841 (a) (1) and 18 U.S.C. §2.   He was not named in Count Three of the indictment which charged possession with intent to distribute 16 kilograms of cocaine on or about June of 1993, in violation of 21 U.S.C. §841(a)(1) and 18 U.S.C. §2. D.E. 2.     Court One listed eighty-eight overt acts of the conspiracy.    Appellant was also named in Count seven.

Pizarro was not charged in Counts Four of the Indictment which alleged possession with intent to distribute 36 kilograms of cocaine in or about December of 1993 in violation of   21 U.S.C. §841(a)(1) and 18 U.S.C. §2.   He was not charged in Counts Five and Six, with the intentional killing of two individuals on April 1, 1994, during a drug conspiracy, in violation of 21 U. S. C. § 848 (e) (1) and 18 U.S.C. §2. D.E. 2.

Of the sixty (60) defendants, ten (10) proceeded to a trial that commenced on May 12, 1999, including Pizarro, D.E. 1223.   On December 14, 1999, Pizarro was convicted on Count One and Two of the second superseding indictment allegedly involving heroin and cocaine.

Pizarro was originally sentenced to Life Sentence on July 9, 2002, D.E. 2325, and a Judgment of Conviction was entered that day.    D.E.2326.

On or about April 17, 2002, pursuant to the directive of the First Circuit concerning the backlog of cases assigned to Judge Carmen Cerezo, Pizarro's case had, however, been transferred to the Honorable Hector M. Laffitte, Ch. U.S.D.J, for sentencing. *See* D.E. 2185.

On April 29, 2002, co-defendant Cabassa moved for the return of the matter to Judge Cerezo, D.E. 2211, which was also joined by Pizarro on that same date and other co-defendants.     Said motions were all denied, as was their motion for reconsideration. D.E. 2314.    Judge Cerezo had also specifically requested that the instant matter remain in her hands for sentencing, having filed "several memoranda . . . before the Court of Appeals expressing her strong views on the matter of [its] reassignment."     D.E. 2516.

The First Circuit Court of Appeals vacated the life sentence and ordered resentencing on October 7, 2005 in Appeal No. 02-1999, U.S. v. Casas II, 423 F.3d 23 (1st Cir. 2005).    Upon remand, the Second Sentencing Hearing was held on September 26, 2006, which imposed a Sentence of thirty (30) years by the same Judge Hector Laffitte.    After direct appeal, this First Circuit vacated the sentence in U.S. v. Correy, 570 F.3d 373 (1st Cir. 2009)(decided June 18, 2009).

The district court ordered that the Probation Office to prepare the amended PSR's and held two Status Conferences regarding this task.   On June 1, 2010, the district court held its Status Conference and outlined the PO's responsibilities of the needed interviews and drug findings based upon the trial transcripts, and Victor Carlo would be the lead officer in charge.   All defendants consented to this agreement.   See A.A. Status Conference Transcript, pgs. 60-82 at p. 65-66. On September 9, 201, held another Status Conference and stated that the Court would read the objections making his own individualized determinations defendant by defendant.   See A.A. pages 83-100, at p. 88, lines 5-10.   The Court also stated that it would read the entire transcripts as well as the PO. Id. at p. 89, lines 17-24

The Third Sentencing Hearing was held on May 15, 2012 and imposed 280 month sentence by Judge Gelpi that is subject to the instant appeal as the District Court's Judgment was not consistent with the First Circuit's Opinion. See A.A. Sentencing Hearing Transcript at pages 9-59.   See First Circuit U.S. v. Correy Opinion at A.A. pages 102-168.

## STATEMENT OF FACTS

**The Trial**

The trial in this case commenced on May 12, 1999 before the Honorable Judge Carmen Consuelo Cerezo and continued for a period of seven months through December 14, 1999.

## THE GOVERNMENT'S CASE

### A.    The Conspiracy Alleged

The government presented its case through witnesses who testified to various alleged drug dealings and three murders that occurred during the time period between September 1992 and March 1995.  The evidence attempted to detail a conspiracy to import and export narcotics into and from the District of Puerto Rico, led by co-defendant Perez-Delgado.  The evidence disclosed, however, that Perez-Delgado, a transporter, did connect with different suppliers. Further, Perez-Delgado utilized different individuals to deliver narcotics to targeted buyers and distributors for approximately twelve transportation events as follows:  1)September  1992  Heroin  Importation,  2)  June  1993  Cocaine Transportation; 3) July 1993 Cocaine Transportation; 4) Late July, early August 1993 Transportation; 5) Late August/September 1993 Transportation; 6) October 1993/December  1993  Transportation;  7)  Late  December  1993/January  1994

Transportation; 8) Late January/February 1994 Transportation; 9) March 1994 Transportation; 10) June 1994 Transportation; 11) Late June/July 1994 Transportation; 12) Other Transportations

**Pizarro, however, was not involved in all transportations undertaken by Perez-Delgado.**

### B.    Government Witnesses and Testimony

Of the 24 government witnesses, Perez-Delgado, Carlos Perez Delgado ("C.Delgado"), T. Martinez, Hector Martinez ("H. Martinez"), Elizabeth Morales ("Morales"); Wilson Rodriguez ("Rodriguez") ; Brian Francis ("Francis"); Jose Velez Roman ("Velez") and Vivian Santiesteban ("Santiesteban") were cooperating defendants.    There were two federal law enforcement witnesses, one DEA Mr. Jay Stoothoff and IRS agent Richard Escalera who testified, in part, with respect to appellant and the seizure of 81 kilo shipment which was the only drugs seized in the investigation.    Appellant was not apprehended at that seizure. Other witnesses testified as to forensics.

Government testimony was permeated by objections on the basis of misconduct and discovery violations.    Testimony was elicited from certain individuals as follows, indicated by Trial Transcripts (hereinafter referred to as TT):

1.     **DEA Agent Jay Stoothoff**

The government's first witness was DEA Agent Jay Stoothoff ("Stoothoff") who first testified on May 18, 1999, that on March 21, 1994, he was at the Carolina Airport on duty and he witness a Pontiac Trans Am stop two persons exit the car, and two persons exit a car behind them and remove four suitcases, TT05/18/99 p.53-55.   He also testified that he approached the car and walked past it to identify the license plate and looked inside the passenger seat and identified Angel Luis Pizarro.   Id.

He stated that he saw the driver and passenger but never identified the driver, only the passenger, Appellant Pizarro.   TT05/18/99 p.57.   That later the four suitcases contain 81 kilos of cocaine and that three persons were detained and later arrested on that date.   TT05/18/99 p.58,60.   Stoothoff stated that he found documents with certain names on a piece of paper in it in the car with the name Wee, TT05/19/99, p.61.   He also stated that it was the name Wee, TT05/18/99 p.66 but later admitted it stated the letters Wic TT05/19/99 p. 87.   The 81 kilos were from another case that the three persons arrested plead guilty.   TT05/20/99 p.10.   On cross-examination, Stoothoff testified that on March 21, Pizarro had darker skin, and longer hair and only remember his face.   TT05/20/99 p.76.   He stated that the car was low, and the sidewalk was six inches high, and he not

−14−

concentrating on him.   TT05/20/99 p.77.   That he only knew that Rafael Segui Rodriguez was the driver of the Trans Am as others had told him, TT05/20/99 p.89; that the DEA 6 were signed June 10, 1994 and there was no mention of the name Wee but rather refer to the passenger as unidentified. Id. p.91.   He also testified on cross-examination that he never saw Pizarro as the driver of the Trans-Am, and never saw him before although he worked at the Airport for 18 months, TT05/21/99 p.18-19. And that a DEA6 report he filled out stated that Wee was the driver, Id at p.20.   Stoothoff contradicted his trial testimony when he admitted that his Grand Jury testimony on October 19, 1995 stated that Wee was the driver. Id. at 22, and that another co-defendant had similar alias, Wicho, Id 28.

## 2.    INS Agent Richard Escalera

Agent Escalera testified that he saw Pizarro on the date of the incident only, and that he had stepped out of the car and was on the passenger side, TT05/24/99 p.20-21. That never saw him before, p.25, only saw him for just seconds, p.35, that no physical description was ever given in a meeting to discuss him when he was serving as ajuror in a state case, or in any DEA report, p.46, that Pizarro looks have changed, lost lots of weight, p.47, and when he identified him he did not look around, rather, he immediately looked to the corner in a pool of people despite his looks being different.   Id. Agent Escalera testified consistent with Agent

−15−

Stoothoff, but different from the other witnesses, that were present that stated that Pizarro was the driver which raised doubts as to the veracity of these statements and the ability to identify Pizarro.

### 3.    Perez-Delgado

Appellant Pizarro had adopted motions filed by other co-defendants.    Most of the summaries are found in Motion for New Trial D.E. 2272 which was joined in by Appellant Pizarro in D.E. 2280.

The testimony of this witness is in the record at the May 24, 1999 direct testimony that stated he identified appellant Pizarro in open court, TT05/24/99 p.25;   he worked at the airport and he used to pass the carry-on baggage 11 keys of cocaine through security, TT05/25/99 p.33; Ray introduce him to Wee, and that from February 93 on, that there were maybe two kilos in each of the two bags, TT05/25/99 p.258-59; that he only used him a couple of months until when security got a little bit better in the airport and we couldn't transport it through his method no more, TT05/25/99 p.61; that Wee was in the Trans Am on March 21, but he left to somewhere that he didn't know, TT05/26/99 p.41.

On cross-examination, the conflicting testimony arose, that during Grand Jurt testimony, he stated that Wee had been driving the Trans Am, 07/6/99 T85;

### 4.    Elizabeth Morales.

Morales never testified to or mentioned appellant Pizarro. Morales testified that she was a courier or mule and had transported cocaine on commercial flights from Puerto Rico, Dominican Republic, Brazil, Panama and Colombia to New York.   TT08/10/99 p. 22.   She testified that Perez-Delgado was managing the whole organization.

On September 16, 1992, she traveled to Panama with Perez-Delgado's brother, Nieves to transport heroin into the United States, but never brought the drugs back.   TT08/10/99 p.26,28.   Instead, Nieves brought them back in his luggage.   Id.    At one point, in September, 1993, she traveled to the Dominican Republic where she waited, but no drugs were given to her.   When she did not hear from anyone, she contacted Freddie Lugo in New York for her instructions. TT08/10/99 p.32-34.

Morales had explained before the grand jury that Perez-Delgado's drug route was from Puerto Plata to Miami and Brazil and further stated that it was Perez-Delgado's ex-wife who was the drug connection at the Puerto Plata airport. D.E. 2272. Perez-Delgado never informed the government of this fact.

On cross-examination, Morales testified that she was afraid of Perez-Delgado because he had previously threatened her and she was afraid he would kill her.   TT08/11/99 p.119.   She stated that Perez-Delgado always

bragged about using weapons and about killing people, often laughing about it. TT)8/11/99 p.127-130; TT08/11/99 p.96-99, 119, 124-125, 127-130.   In fact, he once attended a party in New York celebrating the killing of a young friend in which he had participated.   TT08/11/99 p.130.   When she first met Perez-Delgado, he spoke to her about a trip to Egypt that had gone sour causing him to kill someone.   TT08/11/99 p.137.

She further explained that it was Ralph Segui who always accompanied Perez-Delgado and was used as a hit man.   TT08/11/99 p.136.

Morales further testified as to his properties in the Dominican Republic and elsewhere.   TT08/12/99 p.25-26.

### 5.    Jose Velez Roman

Velez   testified on direct testimony that he was arrested on March 21, 1994 with 81 kilos of cocaine found on him in   San Juan.   TT08/12/99 p.137.   He stated that he got involved through Wee, who was Luis Angel Pizarro Morales. TT08/12/99 p.145.   He testified that he was asked to store a toy for him which was a AKA 47 rifle.   Id. Pizarro did not tell him what type of work he was doing at the airport. Id at 146. He also testified to that he knew him for twenty years but he had went to Pinones with Pizarro a week before Thanksgiving of '93. TT08/12/99 p.147.   That in December of '93 he went with him to the airport and

was handed a tote bag but did not know what the bag contained.   TT08/12/99 p.151-152.    However, without stating how, he stated that the bag Wee was carrying had 12 kilos of cocaine.    Id.

He also testified that Pizarro introduced him to Cabassa in New York where he was given $3,000 dollars, TT08/13/99 p.6-8.   Velez stated he returned to Puerto Rico with $40,000 plus the $3,000.    TT08/13/99 p.23.   On December 15, 1993, Wee told him that he needed to deliver bags and to go with Rolon. TT08/13/99 p.30.   On March 21, 1999, Pizarro and Verde and went to he airport with Rafi, with Pizarro and Hector where he was arrested.    TT08/13/99 p.50, 53. He stated that traveled with Pizarro and others on March 12, 1999 to meet two persons on how to introduce the new ways to get the suitcases through the airport. TT08/17/99 p.10-11.

On cross-examination, Velez admitted that the version of the facts were different as that he never told DEA agents in their debriefing about the $85,000, TT08/17/99 p.26; that contrary to his testimony on direct examination that the car used on December 15th was a 5.0 Mustang, he told the DEA agents that it was a red IROC Chevelot Camaro Z28, TT08/17/99 p.27.

### 6.    Hector Martinez Medina

H. Martinez testified that he acted as a courier who transported cocaine from Puerto Rico to New York via commercial airlines.    No specific quantities were given.    TT08/19/99 p.60-62. He testified that in New York he was met at the airport by several individuals, TT08/19/99 p.65, that Raton told him to call Wee and that Wee came by and picked him up, and they went to Andy's Café in Isla Verde, and that there were some 3,500 kilo's waiting to be moved to the U.S.. TT08/19/99 p.90.    That Wee called him weeks later to see if he could get Raton to deliver the bags.    Id.. The witness did an in-court identification but knew the person only as Wee.    TT08/19/99 p.91.    He testified that he set up a meeting with Wee and El Viejo.    TT08/19/99 p.95 and that he spoke with Wee and told him that through Hugo we would have another connection. TT08/23/99 p.7.    He went on to testify that Wee called him twice for him to give Raton the bags containing cocaine but did not know the specific amount of drugs to be carried. TT008/23/99 p.14.    In early March 1994, no specific date, he testified that Wee called him regarding another trip and brought two bags that were transferred to Shorty's car, TT08/23/99 p.15, that he went to a house in Fountains or Carolina, not remembering exactly, where Wee told him to go with Shorty to make a delivery of a bag,    TT08/23/99 p.17, which he got paid $3,000.    Id at 22.    He also testified that on March 11, 1998, Wee called him and gave him a bag with the

drugs. Id. and on March 20, 1998, Wee stated that he had another trip, 8/23/99 T30; but did not travel on that date, Id at 31; but on the following day, March 21, Wee came to pick up him up with Velez Roman, went to Carolina and went to the Airport, the others got out and when two agents approached, everyone split and Wee and the other person got inside the car and left quickly. TT08/23/99 p.33, and he also testified that who was in the car was, Wee, Velez Roman and I. TT08/23/99 p.34.

He also testified that the name Wee was the only name he always knew Appellant by, TT08/23/99 p.39. On cross-examination, he testified that he told Agent Stoothoff that on March 21, 1994, Wee was driving the Trans Am, TT08/23/99 p.76; that Wee stepped out of the car at the airport, TT08/23/99 p.77; that Wee was never a passenger in the front seat while he was with him in the car; TT08/23/99 p.78; that the system used for transportation was he was given closed bags, that were then taken to the airport locked, they were taken behind a bar, which he could not see, and then retrieve them after they reappeared from a garbage cart, but he felt he was not accountable for the contents of the bags, and that the bags were sent through the checkpoint by airport personnel, TT08/23/99 p.102-105.(morning) p .14.

### 7.    Thomas Martinez

T. Martinez testified that he did not mention Wee was present when guns were taken between one and less than two years after his earlier testimony but still believed he had a good memory when asked by the Court.    TT09/23/99 p. 58-59.

T. Martinez testified that he was involved with other individuals transporting drugs to New York. He was not willing to cooperate until the government demonstrated the weight of its evidence against him, TT09/24/99 p.41, and only changed his plea to "guilty" because he saw the benefits of cooperation. TT09/24/99 p.98.

T. Martinez testified that Perez-Delgado was "the centerpiece of the organization," TT09/24/99 p.25, and that in late November 1993, Perez-Delgado started a drug route from JFK Airport in New York. TT09/21/99 p.43-44.   T. Martinez stated that it was then that he met Pizarro, who was trying out the new route, TT09/21/99 p.44-45, and that two days later, Perez-Delgado "sent" others including appellant to JFK Airport to retrieve Velez-Roman ("Papo"), who was transporting cocaine.   TT09/21/99 p.48. T. Martinez testified that it was Perez-Delgado who paid Velez. TT09/21/99 p.49.

T. Martinez testified that there were two or three more jobs. Although he was unable to recall quantities, he was able to recall and Pizarro and Velez did those jobs, TT09/21/99 p.50, between late November 1993 to mid-December 1993. TT09/21/99 p.51.

On cross-examination, T. Martinez stated that his trial testimony was inconsistent with his grand jury testimony.   *TT 0*9/24/99 p.59.   That Martinez

never testified regarding Pizarro taking arms from Mayaguez to San Juan. TT09/27/99 p. 21 and that he never spoke with Pizarro and did not know for a fact that there were guns in a green knapsack.    TT09/27/99 p.26.    He also admitted that he did not see him in the boat. Id at 27.

T.    Martinez    testified    further    concerning    a    Christmas    party    at Perez-Delgado's house in Puerto Rico.    He stated that he was given a cross symbolizing membership in the organization but that Wee was not present at the party.    TT09/21/99 p.63-64.

### 8.    Wilson Rodriguez Palaez

Rodriguez    testified    in    the    hope    of    obtaining    a    reduced    sentence. TT08/25/99 p.8.    He was married to Perez-Delgado's sister and began working for Perez-Delgado's organization in July 1993. TT08/25/99 p.10.    He testified that his first job concerned four kilos delivered from Puerto Rico to Miami. TT08/25/99 p.10-11.

Rodriguez also testified that the night before he traveled, he was introduced to at that time this person called Wee by Perez-Delgado.    TT08/25/99 afternoon session, p.23.    That Perez-Delgado told Rodriguez that Mr. Pizarro would be giving him suitcases at the airport and then made an in-court identification of Appellant.    Id.

Rodriguez stated that it was Brian Francis who handled the bags in Miami, TT08/25/99 p.14, and that Rodriguez was paid $3,000. TT08/25/99 p.16. Rodriguez testified that he had knowledge of 100 kilos per week and up to 500 kilos per month being transported to New York. TT08/25/99 p.22. He testified that in August 1993, he and another individual claimed two suitcases in Miami and turned them over to Cabassa and Perez-Delgado and for that he was paid $2,000 by Perez-Delgado. TT08/25/99 p.26-27.

Rodriguez testified that he was afraid of Perez-Delgado because he was the head of the organization. TT08/26/99 p.13-14.

On cross-examination, Rodriguez testified that he failed to mentioned that Wee gave him two suitcases in 1993 as per the DEA6, page 2 report of March 5, 1996 and that he is only mentioned once in the report. TT08/26/99 p.38,40.

### 9.    Carlos Perez-Delgado

C. Perez-Delgado stated that Angel Pizarro, Wee, in '93 towards the end of the year started passing through for him and Arias and that we would give Wee these carry-on bags who would take them to Raton. TT08/30/99 p.18. He identified him in open court, TT08/30/99 p.20; Pizarro was present at a meting on March 21, 1994 and that there were many people there. TT08/30/99 p.21. Later that day he was beeped by him and picked him up and traveled to San Lorenzo, TT08/30/99

p.24; Pizarro brought a gun to Perez-Delgado in late March '94; TT08/30/99 p.27; and brought them to his house on April 1, 1994, TT08/30/99 p.44.

On cross-examination, C. Perez-Delgado testified that after two interviews on October 18 and 24, there was no mention of any guns in the DEA6 reports TT 08/30/99 p.104-105.

C. Perez-Delgado also testified that he did not believe he would receive a reduction in sentence and did not expect anything for testifying.   TT09/01/99 p.53-54.   However, after his testimony, he petitioned the court for relief from his sentence claiming a breach of contract.   D.E. 2411.

He testified that Perez-Delgado, F. Laverde and Cabassa were the leaders of the organization.   TT08/27/99 p.89.

C. Perez-Delgado testified that he used drugs; and used a forged passport; assisted his wife Vivian in securing a false license; had a false license; and did not report money for taxes.   TT08/30/99 p.99-101.

### 10.   Brian Francis

Francis testified that he worked primarily with two individuals, Ralph Casas and Winston Cunningham.    TT09/03/99 p.40.

### 11.   Vivian Santiesteban

The testimony consisted that her husband worked with his cousin, Israel Perez-Delgado and she stated from Puerto Rico Angel Luis Pizarro when asked about who else, if anyone worked in that drug trafficking organization, TT 08/18/99 p.19.   She testified that Pizarro went to her house to complain that they were not using him.   TT08/18/99 p.39.   She testified that Pizarro's role in the organization was transporting drugs due to the job that he had at the airport.   *He used to be a carrier*.   TT 08/18/99 p.43.(emphasis ours).

### DEFENSE'S CASE

### A.    Defense Witnesses and Testimony

The defense called six witnesses: 1. Miguel Berrios, Probation Officer Berrios testified that in preparing Thomas Martinez' PSR, he relied on the representations of AUSA Fernandez. TT 10/25/99 p.89, 92, 98.   2. Zulma Basora Urrutia, Probation Officer Basora stated that she interviewed C. Perez Delgado to prepare his PSR. TT10/27/99 p.10.   Carlos described his role in the offense simply as that of driver for his drug-dealing cousin, Israel.   TT 10/27/99 p.14-15. 3.   Special Agent Jay Stoothoff, conceded that he did not believe certain things he was told by Perez-Delgado.   TT10/27/99 p.131-132. 4. Puerto Rico Police Officer Celia Yvonne Crespo Concepcion, was called to testify by the court after it was revealed, in yet another untimely disclosure by the prosecution, that she had

conducted an investigation of the Moca murders and spoken with an eyewitness. TT 07/06/99 p.4-9, 24-44; TT 07/07/99T45-47.

Jeannette Mercado Rios ("Mercado")  Mercado was the prosecutor in charge of Indictment Cr114 wherein Perez-Delgado, Pagan, Medina and Velez were charged with the March 21, 1994 seizure of 81 kilograms of cocaine at a Puerto Rico airport.   TT11/02/99 p.6-8.

## TRIAL MOTIONS AND CHARGE

There were a host of motions were filed by codefendant Cabassa that were at one time or another joined by in by other co-defendants, including appellant Pizarro, e.g.'s Motion to dismiss on Brady grounds entered July 9, 1999, D.E. 1370; Motion for additional discovery entered July 14, 1999, D.E. 1378.

The judge charged the jury on December 13, 1999.   The court specifically charged the jury that quantity and type of substance need not be considered. TT12/13/99 p.134-135.   This reserved the enhancement sentencing issue in violation of the Appellant's Sixth Amendment Right to Trial by Jury for all under the *Blakely v. Washington,* 124 S. Ct. 2531 (2004), case by the Supreme Court of the United States.

## SUMMARY OF ARGUMENT

Appellant's statutory and constitutional rights to a speedy trial and sentencing were denied as a result of the commencement of trial 41 months after Pizarro's indictment and the further delay of sentencing until years thereafter.

At trial, Appellant's right to a fair trial was further impinged by the trial court's instruction to the jury that it need not determine the quantity or the type of drug allegedly involved in the conspiracy for which Pizarro should bear responsibility.

Prior to the third sentencing hearing, trial transcript of some 87 days of trial, Appellant Pizarro's case was transferred from the retired Judge Hector Laffitte to another district court judge, Hon. Gustavo Gelpi for sentencing.   Contrary to his own order, the district court was not familiar with the entire record.

On March 18, 2011, the District Court issued an Order that required the U.S. Probation Office for post-rehabilitation considerations pursuant to the recent United States Supreme Court case in United States v. Pepper, 562 U.S.     (2011). See Dk. 3021.

At sentencing, the court committed fatal errors were also committed in the determinations that appellant was responsible for a two-level enhancement pursuant to 2D1.1(b)(1) concerning a toy AK47 firearm, as well as the refusal to consider Pepper Information.   The Court considered but also refused to

downwardly depart based upon appellant's: 1) prolonged detention at a pre-sentence facility; 2) extraordinary post-arrest rehabilitation; 3) disparate sentences, and/or other factors, including, 4) prosecutorial misconduct.

## VI.  LEGAL ARGUMENT

### POINT I

### WHETHER THE COURT COMMITTED ERROR IN ATRIBUTED THE QUANTITY AND TYPE OF DRUGS TO APPELLANT

### STANDARD OF REVIEW

Appellant Pizarro was original sentenced was before the Supreme Court decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000), and more recently *Blakely v. Washington*, 125 S. Ct. 2531 (2004), changed the legal landscape with regard to jury determinations of type and quantity of drugs for which responsibility should be assessed.   The First and Second Sentencing were after these cases.

### PRIOR SENTENCING HEARINGS

Upon remand in the first direct appeal, the First Circuit vacated the first sentence imposed of Sentence of Life and the Second Sentencing Hearing was held on September 26, 2006, which imposed a Sentence of thirty (30) years by the same

Judge Hector Laffitte.   This second Sentence was also was vacated by the First Circuit in U.S. v. Correy, 570 F.3d 373 (1st Cir. 2009)(decided June 18, 2009). The recent Third Sentencing Hearing was held on May 15, 2012 that imposed 280 month sentence by Judge Gelpi that is subject to the instant appeal as the District Court's Judgment was not consistent with the First Circuit's Opinion

### TRIAL COURT

The trial court specifically charged the jury that quantity and type of substance need not to be considered, TT 12/13/99 p. 134-135. As there was no objection to the charge, TT 12/08/99 p. 13, the plain error standard of review applies.

This court has, however, indicated that "it seems unfair to fault [a defendant] for failing to raise at trial an objection based upon a rule that was not announced until after the trial was concluded.''*United States v. Barone*, (1st. Cir. 1997)(citing United States v. Collins, 60 F. 3d 4, 7 (1st. 1995)). Appellant urges that it is indeed unfair and, accordingly, a harmless error analysis is appropriate, particularly where, as here, timely objections were interposed to the failure to consider Apprendi's ramifications at all stages of sentencing and post-judgment litigation after its announcement. See United States v Casas (Casa II) 425 F.3d 23, at 59 (1st

−31−

Cir. 2005). Whether a defendant has preserved a Booker claims, the court reviews for harmless error for re-sentencing unless the government can show beyond a reasonable doubt that a lower sentence would not be imposed under the post-Booker regime, Id, citing *U.S. v. Gomez-Rosario*, 418 F,3d 90, 109 (1st. Cir. 2005).

## LEGAL ARGUMENT

Pizarro was charged with a violation of 21 U.S.C. §846, conspiracy to possess with intent to distribute and cocaine and heroin, and 21 U.S.C. subsection (a)(1) .  On December 14, 1999, the jury returned a guilty verdict as to Counts 1 and II and he was acquitted of Counts 4, 5 and 6.  This appeal, in part, concerns the application of Apprendi, as it stands post Booker, with regard to sentencing for conspiracy to violate 12 U.S.C §842 (a)(1). Individuals found guilty of conspiracy, pursuant to 21 U.S.C. §846, to commit a §841(a)(1) offense are punished through the selection of one of a series of §841(b)(1) subsection, (A)-(D), that prescribe varying ranges of penalties defending upon, inter alia, the determination of the amount of drugs for which a defendant is deemed criminally responsible.

Post *Apprendi,* the circuits have divided over two elemental aspects of sentencing those convicted of §841 (1)(1) violations, violations, both detrimentally

impacting Pizarro and, most respectfully, squarely presented in this case for the court review.

Post-*Apprendi,* at Sentencing after Trial, the Quantum of Drugs Sufficient to Trigger a Statutory Sentencing Range Above an Interminate Amount Should be Determined by a Jury Beyond a Reasonable Doubt.

This Court addressed the relationship between *Apprendi* and *Booker* as to drug quantity determinations in the United States v. Perez-Ruiz. Although no defendant can be sentenced under the guidelines beyond a statutory minimum, under Booker a judge may make the drug quantity findings necessary to trigger a statutory maximum. Casas II at 65 (citing *United States v. Perez-Ruiz*, 421 F.3d 11, 14 (1st. Cir. 2005). Explained to Gonzalez court, the rule in Apprendi is that "[i]t is unconstitutional for a legislature to remove from the jury type assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed." Id. at 127 (quoting *United States v. Apprendi*, 530 U.S. 466, 490 (2000)(emphasis in Gonzalez)).

In a sentencing for a conviction of a §841(a)(1) offense, because each §841(b)(1) subsection prescribes a period of incarceration wherein the minimum and maximum increase in tandem, the determination of a statutory maximum

sentence necessarily controls the statutory minimum. Hence, it is clear that when sentencing a person convicted of violating §841(a)(1), the fact-finder who determines the drug quantities that will place an individual within a particular (b)(1) subsection has, *ipso facto,* established both the statutory maximum and the statutory minimum. Gonzalez at 126. 21 U.S.C. §841(b)(1).

Accordingly, '[I]f the type and quantity of drugs involved in a charged crime may be used to impose in a sentence above the statutory maximum for an indeterminate quantity of drugs, then the type and quantity of drugs in an element of the offense that must ve charged in the indictment and submitted to the jury. ' United States v. Cordoba-Murgas, 422 F.3d 65, 68 (2d. Cir. 2005)(quoting United States v. Thomas, 274 F.3d 655, 660 (2d. Cir. 2001)(en banc)).

The indictment in this case alleged a crime concerning two distinct types of narcotics, cocaine and heroin. Significant testimony was presented with regard to the transportation and distribution of heroin as well as cocaine. The jury, however, was not required to delineate between the two types of drugs. Nor was the jury asked to determine the quantities attributable to Pizarro for each type of drug. As a result, as explained below, he was deprived of his Sixth Amendment rights.

**The Reasoning of the First Circuit**

As argued above, the view of the First Circuit that, under Booker, a sentencing judge has the power to determine the drug quantities necessary to trigger a statutory sentencing maximum (or range). *Casas II* at 65 (citing *Perez-Ruiz (II),* 421 F.3d at 14). The court, in Casas, based its position upon the following observation in Perez-Ruiz (II).

> Under the 5-4 constitutional ruling in Booker, judge-made enhancement under the guidelines that result in a sentence grater that the sentence grater that the sentence that could be imposed based solely on the facts found by the jury do amount to Sixth Amendment violations of the guidelines are treated as mandatory; but under the companion 5-4 remedial ruling in Booker, this problem is washed out by treating the guidelines as advisory. A defendant sentenced under the advisory one [,]… but Booker both created and cured the constitutional error at the same time.

Id. At 14-15.

Respectfully, although the language in the Casas opinion is uncertain, if the First Circuit believes that a judge may make the quantity finding necessary to establish a statutory maximum, then, as discussed above, that is an erroneous, ruling as designation of a statutory maximum in the context of sentencing pursuant §841 (b)(1), implicates a range of imprisonment, which thus included the statutory minimum.

Appellant believes that the First Circuit has failed to properly acknowledge the distinction between a finding of facts that identifies the applicable statutory

range pursuant to a subsection of 21 U.S.C. §841(b)(1), and a finding of facts that varies a sentence within a statutory range. *Booker* addressed the latter. *Apprendi*-which , Pizarro argues, survives Booker-explained Second Circuit, concerned the former as interpreted by *Thomas* and discussed below.

### The Reasoning of the Second Circuit

The Second Circuit with regard to "crimes defined by reference to the lettered subsection of §841(b)(1) that provide for enhanced penalties for drug trafficking in specified quantities" held, in Gonzalez that "statutory drug quantity is an element in all prosecutions" of such offenses, *Id.* At 115 (citing, e.g.,Thomas, supra).

The Second Circuit explained that this determination is firmly grounded in the *Apprendi* Court ruling that "if [a] fact would 'expose the defendant to a greater punishment than that authorized by the jury's guilty verdict, ' then it must be deemed an element and submitted to the jury. '' Gonzalez at 123 (quoting *Apprendi* at 494). Because the amount of drugs involved in a crime was a fact that, pursuant to §841(b)(1), exposed a defendant to a punishment that was above the maximum amount that could be attribute to a jury finding of guilt where no quantity was submitted for its deliberation, quantity was an element of the offense.

Accordingly, the Second Circuit invoke the principle of constitutional avoidance, as expressed by the Supreme Court in, e.g, McConnell v Sec, 540 U.S.93, 180, 124 S. Ct. 619 (2003), to construe the drug quantities specified in the subsections of §841 as elements of the offense. Such a construction of §841 avoided the potential incompatibility of treating these (b)(1) subsections, although under the label "Penalties", as sentencing factors. The unassailable quantities exposed a defendant to severely increased punishments, pursuant to §841(b)(1)(A)-(D), they were elements of the offense under *Apprendi. Gonzalez, supra* at 124.

### *The Consequences of the Error*

Given the above, it is necessary to "ascertain what findings can be ascribed to the jury." *Perez-Ruiz* at 15 (citing *United States v. Soto-Beniquez*, 350 F3d 131, 160 (1st Cir. 2003); *United States v. Nelson-Rodriguez,* 319 F, 3d 12, 45 (1st. Cir. 2003)). In this regard, there is a highly unsettling variance between this significant quantities of heroin and cocaine respectively that do indeed appear in the testimony Of the same individuals by the jury given its decision to acquit Pizarro on the substantive count involving cocaine. Chief among the incredible was Israel Perez Delgado, whose testimony regarding Cabassa's alleged involvement in a

conspiracy to commit to Moca Murders, TT06/03/99 p.34-41) ("Ray Nicoli Cabassa and John Correy shot them both in the back of the head, "TT06/03/99 p.41), was obviously ignored, since Cabassa was acquitted. There was no basis to given his testimony concerning drug dealing any greater weight than that afforded his lies regarding the alleged murders. So too, Thomas Martinez, whose lack of credibility, see his testimony regarding Cabassa's alleged involvement in Count TT 04/09/21/99, p. 84, 88, 90, 92-96, 98-99; TT 09/23/99 p.82, is readily inferred by the jury's rejection of that accusation. Further, and significantly, corroboration of any testimony by way of a seizure of drugs did not occur. *See Perez-Ruiz* at 19.

Accordingly, the entire scenario presented in this matter weights heavily against determining this is a record that can substitute for the constitutionally mandates jury finding as to type and quality of narcotics.   There is the fact there was considerable testimony on most serious substantive charges from witnesses who were not to be believed together with the fact that instructions from the court affirmatively disavowed any jury responsibility for determining quantity of drug. There is the further concern that this misshapen record was then reviewed by a sentencing judge, who did not preside a trial and was thus unfamiliar with critical day-to-day development and concerns, and who did not make any independent findings. What is the source of constitutional comfort in such a scenario?

Respectfully, there is none-error was committed in failing to required a specific as to quantity and type of drug. Pizarro's sentence is, therefore, constitutionally infirm. Pizarro convicted solely of conspiracy, should, therefore, be sentenced pursuant to 21 U.S.C. §841(b)(1)(A), C.

When applied to Pizarro, the law of the First Circuit allows for a sentence of 280 months (twenty-three 1/3 years) imprisonment, *see* 21 U.S.C. 841 (b) (1) (A), while the law of the Second Circuit would not permit a sentence of greater than 20 years for an individual not subject to enhancement pursuant to a prior conviction, as in Pizarro's circumstances. See 21 U.S.C. §841(b)(1)(C). Thus, the implications of the subject error are enormous.

B. **After *Apprendi*, a jury Should be required to Make an Individual Determination of Drug Quantity Beyond a Reasonable Doubt to Establish a Statutory Sentencing Range in a 21 U.S.C. §846 Conspiracy to Violated §841(a)(1)**

The Court acknowledge that *Apprendi* error was committed because the sentencing Judge , and not the jury, made the quantity finding which determined §841(b)(1)(A) was controlling. *Casa II* at 65-65. This *Apprendi* error-the triggering of subsection A through a judicial finding by preponderance was the subjected to harmless error reviews. Id. the purpose of the review of the error occasioned by the judge performing that fact-finding to determine the applicable §841(b)(1)

subsection rather that the jury, the *Casas II* court turned to a conspiracy-wide assessment of drug quantity rather than an individualizes accounting, *Id.*

Appellant Pizarro argues that a conspiracy-wide, judicial determination of quantity by a preponderance for the purpose of establishing a statutory sentencing range in a 21 U.S.C. §846 conspiracy is error. In fact, a conflict has developed between the Circuits and others, including the First Circuit, concerning whether, after *Apprendi,* a jury is required to make an individual determination.  This findings opposed to a conspiracy-wide determination, of drug quantity beyond a reasonable doubt to establish a statutory sentencing range in a 21 U.S.C. §846 conspiracy to violated §846 conspiracy to violated §841 (a)(1).

Prior *Apprendi,* jury finding s beyond a reasonable doubt were limited to the type of drug, not the quantity. A §846 drug conspiracy was, therefore, for jury, fact-finding purposes, an agreement to possess, transport, etc…"measurable amounts" of specific drug. See, e.g. Edwards v. United States, 523 U.S. 511, 513 (1998) ("The District Judge instructed the jury that "the government must prove that the prior to *Apprendi* "we drew no distinction between drug quantities that defines statutory sentencing ranges and quantities that influenced the determination of Sentencing Guidelines ranges." Id. (Citing United States v. Moreno, 181 F.3d

2006, 213-216 & n.4 (2nd. Cir. 1999)).    Moreno, a drug conspiracy case, highlights the lack of distinction between conspiracy-wide and individual determinations of quantity that characterized pre-*Apprendi* sentencing proceedings.

Findings of quantity pre-*Apprendi* were, consequently, not the province of the jury finding of an overt act. The general conspiracy statute, §18 U.S.C.  371 , added a requirement to the common law definition of conspiracy-proof of an over act. By failing to incorporate this added element in 21 U.S.C. §846, Congress plainly expressed its intention to follow the common law definition of statutory terms. *Whitfield v. United States,* 543 U.S. 209, 125 S. Ct. 687, 690-691 (2005) (citing *Molzof v. United States,* 502 U.S. 301, 307-308 (1992) and discussing United States   v. Shabani, 513 U.S. 10 (1994)

The Supreme Court has "consistently held that the common law understanding of conspiracy 'does not make the doing of any act other that the act of conspiring a condition of liability." Whitfield 125 S. Ct. At. 691 (quoting Shabani at 13-14 (quoting Iannelli v. United States, 420 U.S. 770, 777 (1975) ("Conspiracy is an inchoate offense, the essence of which is an agreement to commit an unlawful act")(citations omitted)). Thus, consistent with the common law, a conviction for conspiracy, pursuant to  846  concerns  the  agreement.  Conspiracy-wide

responsibility of each member of the conspiracy, which is based upon an individualized determination.

Personalized findings at sentencing occurred, pre *Apprendi*   judges commonly determined facts justifying a choice of a heavier sentence on account of the manner in which particular defendants acted. "*Booker*, 125. Ct. At 751 (citing *Apprendi,* 530 U.S. at 481) See, e.g. *Moreno,* supra at 213-216. *See generally, Edwards, supra.*   Consequently, a sentencing judge made one finding of quantity per drug type for each individual based upon the offense of conviction and relevant conduct. This finding was by a preponderance and establish both the statutory range pursuant to 841(b)(1) and guideline sentencing range.

*Apprendi* changed the rubric by materially distinguishing findings of quantity triggering a particular statutory range from findings in furtherance of a sentence within a statutory range. As discusses above, the former (possibly contrary to the view of the First Circuit) must be decided by a jury beyond a reasonable doubt or admitted. The latter, however, now fall under the post Booker judicial mandate, advised by the guidelines. Therefore, after *Apprendi*, it became necessary to provide guidance a jury in fulfilling its role as the arbiter of the statutory prong of the drug quantity determination in conspiracy cases. There is s split among the

circuits as displays by the following rulings, one appearing as a basis for the First Circuit's decision in Casas, and another entered by the Fourth Circuit. It is urged that these ruling, concerning the inquiry by which a particular subsection 841 (b)(1) is establishment for sentencing purposes, are irreconcilable.

In the First Circuit, "For *Apprendi* purposes, 'the conspiracy-wide drug quantity determines the statutory maximum' Casas II at 65-66 (quoting *United States v. Soto Benitez(II),* 356 F3d 1, 48(1st. Cir. 2004)(emphasis added)). Thus, as a judge may establish quantities to a statutory sentencing range (and hence her maximum and minimum exposure) may be based upon a judge's conspiracy-wide drug quantity determination upon a preponderance of the evidence.

**The Reasoning for the First Circuit**

It is respectfully submitted that the First Circuit has relied upon a thin line of authority to support the proposition that, after *Apprendi,* a conspiracy-wide determination as to drug type and quantity was sufficient for the purpose of establishing a §841 (b)(1) statutory maximum. This is, in effect, a new rule of sentencing, fully at odds with the procedure with the procedure in place prior to *Apprendi.* The Casas court relied solely upon its decision in *Soto-Benitez. Casas II* at 65-66 . *Soto-Benitez,* in turn, relied principally upon the circuits's prior

decision in *Deman v. United States,* 298 F 3D 34 (1st. Cir. 2002). *Derman* cited the Supreme Court's decision in Edwards, supra, in support of its holdings that the jury should determine the existence vel non of the conspiracy as well as any facts about the conspiracy that will increased the possible penalty for the crime of conviction beyond the default statutory maximum; and the judge should determine, at sentencing, the particulars regarding the involvement of each participant in the conspiracy *Derman* at 42-43 citing Edwards, 523 U.S. at 514) (footnote omitted).

It is respectfully submitted that it overstates the holding of Edwards to read into its opinion authority to incorporate conspiracy-wide findings of quantity to establish a particular individual's statutory sentencing range. Further, construing this pre-*Apprendi* case in the manner of the Derman Court does not properly consider the sentencing regimen then in place, as explained above.

In Edwards, the defendants were arguably convicted of a cocaine-only conspiracy, yet their sentences were enhanced pursuant to judicial findings by a preponderance that they were also involved with cocaine base. Id 513-514. The Edwards Court rejected defendants' objections to this procedure, because the sentence imposed were, nevertheless, within the statutory maximum permitted for a cocaine-only conspiracy. Id. At 515.   There was no ruling in Edwards that the

drug quantity determination required to establish the statutory maximum sentence would be conspiracy-wide. On the contrary, although nor expressly articulated as the proper methodology, it appears that the sentencing judge's particularized finding by a preponderance of one quantity per drug per defendant was incorporated into the procedure that established the applicable 841 (b)(1) subsection.   That individual determination of quantity controlled for both statutory and guidelines purpose, can be deducted from the following except taken form Edwards. "[A]s the Government points out, the sentences imposed here were within the statutory limits applicable to a cocaine-only conspiracy, given the quantities of that drug attributed to each petitioner. " Edwards at 514. Despite break with the established pre-*Apprendi* practice with regard to drug quantity determinations, the First Circuit's holdings that an individualized determination of quantity is nor required to set the statutory maximum (and thus the applicable §841 (b)(1) sentencing range) has been adopted by other circuits. *Unites States v.Stiger,* 413 F 3d 1185 (10th Cir. 2005) *United States v Phillips,* 349 F3d 138, 141-43 (3d. Cir. 2003), vacated on other grounds, *Barbour v. United States,* —U.S.— 125 S.Ct. 992 (2005); *United States v. Knight* , 342 F.3D 697, 709-12 (7th. Cir. 2003); *United States v. Turner*, 319 F.3d 716, 722-23 (5th. Cir 2003)

Accordingly, if *Apprendi* is to be faithfully followed, Pizarro urges that

individualized fact-finding with regard to responsibility for drug quantities in a conspiracy must control the choice of applicable statutory sentencing range.

Further, and significantly, corroboration of any testimony by way of a seizure of drugs did not occur in the overt acts under Count 1.    *See Perez-Ruiz* at 19 (citing *e.g., Knight, supra*, 342 F.3d at 712).

The PSIR asserted that the amount of drugs involved (more than 150 kilograms of cocaine) resulted in a base offense level of 38, PSIR ¶109, (Footnote 2 p. 30 stated that there was evidence that the defendant is accountable for more than 3,5000 kilograms of cocaine); which after a two level increase for use of a firearm, PSIR ¶110, resulted in an adjusted offense level of 40.   PSIR ¶115. Criminal History as 2, ¶117-119, with the guideline imprisonment range from 324 to 405 months of imprisonment.

## POINT II

## WHETHER PREJUDICIAL ERRORS WERE COMMITTED BY THE SENTENCING COURT

### STANDARD OF REVIEW

Legal questions concerning sentencing determinations are reviewed de novo. Findings of fact are reviewed for clear error.   *United States v. Alegria,* 192 F.3d

179, 191 (1st Cir. 1999). A decision by the district court not to depart is reviewable for abuse of discretion.

## PRIOR FIRST CIRCUIT DECISION & FILINGS BEFORE THE MAY 15, 2012 SENTENCING HEARING

The Court of Appeals for the First Circuit remanded the present case for resentencing on June 19, 2009, and held that "credibility issues" had to be made by the sentencing Judge as to the testimonies of Israel Perez Delgado ("Perez") and Thomas Martinez ("Martinez"). See, United States v. Correy, 570 F. 3d 373, 378 (1st Cir. 2009). The First Circuit also had stated that though it's discussion in the prior opinion (United States v. Casas, 425 U.S. 23 (1st. Cir. 2005)) was focused on Martinez and Perez, equally applicable to all witnesses was the rationale for requiring independent credibility assessments by the sentencing judge. Id. at 378. Within its mandate, the First Circuit recognized that defendant's were entitled to a PSR which provides assistance to the court and notice to the defendant of the evidence to be used to determine drug quantity" with "references to the trial record". U.S. v. Correy at 384. In specific to Pizarro, the First Circuit held that:

> "[C]onsidering the paucity of factal findings regarding these shipments, and considering that this quantity was addressed only in the government's sentencing memorandum, and not in the PSR, and considering the district's court general refusal to consider credibility arguments, we are not convinced that Pizarro was given a full and fair

opportunity to challenge the drug quantity evidence presented against him. ……Thus, in this case, we will not affirm the drug quantity determination based upon a single report from Martinez-Medina that mentioned 3500 kilograms where that report was not included in the PSR, where the Judge did not make any specific findings regarding this quantity, and where the judge generally announced his refusal to question such facts".   Id.

On July 7, 2011, the U.S. Probation Office filed a Second Amended PSR, that relied heavily on the trial testimonies of both Perez and Martinez and of other witnesses, i.e., Vivian Santiesteban, Jose Velez Roman and Hector Martinez Medina but failed to incorporate crucial trial testimony and references to the record and other reports of investigation which would have complied with the First Circuit's Mandate. The PSR did not individualize the Pizarro's drug quantity finding because it included all the overt acts in the indictment.   The Court aloso committed error when it relied on the global and summarize the testimony. See A. A. p. 32, lines 4-15 (Globally supports drug finding).

The USA filed its Sentencing memorandum that for the first time included several references to the use of firearms allegedly by the Pizarro that tainted this issue because some of the references for the use in acquitted conduct.   See A.A. p. 26, lines 21-25, p. 27, 28.

The district court stated that **"I know it has been raised and the objections**

to the presentence report …challenging firearms enhancement, I am not going to go into those issues because it is outside of the scope of the remand order". See A.A. p. 11, lines 12-17.   **"Then there is the weapons adjustment page 25, also remanded, this case was not remanded for the Court to consider that adjustment or not, so I will not revisit those other guidelines adjustments".** (emphasis ours).   See A.A. p. 12, lines 13-16.   See also A.A. p. 29, lines 22-25, p. 30, lines 1-9.   (Same error Court's ruling not to consider other adjustments). This limitation was error that eventually imposed a sentence that was more than necessary and with the 2-point weapons enhancement and did not afford Pizarro the argument against the imposition. See A.A. p. 24 lines 18-25, p. 25 and p. 26, lines 1-13.

## THE COURT ERRED AS PSR OBJECTIONS WARRANTED A. DOWNWARD DEPARTURE

The defendant Pizarro filed PSR Objections pursuant to the FRCP Rule 32, at Dk. 3253, Sentencing Memorandum, Dk. 3256, See also Motion Submitting Addendum Exhibit List, Dk. 3237, and Motion Submitting MDC Transcript and Work, Dk. 3272; that warranted Pepper Factors and a lower sentence.   These PSR objections included, but not limited to:

**The Offense Conduct:Page 4, par. 4**

The paragraph was objected to as it was the version of the evidence "according to the government" and the First Circuit mandate was not followed. There is no counter position stated in the PSR as per the defendant Pizarro.

---

**Pages 5-28, par.'s 5, 6, 7, 8, 9, 10, 11, 14, 15, 18, 19, 20, 21, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 52, 53, 54, 58, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91.**

These chapter and verse of these facts are objected to as they are the alleged overt facts, recited verbatim from the Superseding Indictment, and they do not mention defendant Angel Luis Pizarro and could not be considered in the drug quantity determination by this Court.

The First Circuit determined that the presentation of a properly prepared PSR is an Essential element in a fair sentencing proceeding. Submission of the instant PSR was not compliance with the above rulings.

The Office of the United States Probation Service is not an arm of the Office of the United States Attorney, but is instead an arm of the court. United States v. Saxena, 229 F.3d 1, 5 n.1 (1st Cir. 2000)(citing United States v. Charmer

Industries, Inc., 711 F.2d 1164, 1170(2dCir. 1983)). Accordingly, findings as to the offense conduct should be independent and based on the evidence as opposed to a mere recitation of overt acts in an indictment. Such a position is even more prudent where a jury has acquitted certain defendants of certain overt acts and/or separate counts beyond a reasonable doubt.   See codefendants acquitted conduct included in PSR.

Further, defendant's position is that amendment of the PSR pursuant to his objections did not serve as a satisfactory substitute for the appropriate preparation of the PSR in the first instance. The manner in which the PSR as presently constituted was legally deficient and unfairly limited defendant's ability to fully delineate and substantiate his objections.   The presentation of his specific objections necessarily reflected this limitation. As explained in Casas, supra, "one reason for a PSR is so that the parties do not have to comb through voluminous trial transcripts to anticipate remaining factual and legal issues." Id.

Policy statement U.S.S.G. §1A4(a) recognizes the distinction between actual conduct and charged conduct and the inherent problems that arises from failing to distinguish between the two. Most significant is a recognition that defendant's actual conduct, that is, that which was proven at trial, ameliorates some concerns regarding sentencing manipulation. As a consequence of the faulty methodology

evident in the PSIR there are numerous overstatements and misstatements of the actual facts. Thus, defendant objects to the PSR as having been prepared in a manner contrary to law, and urges that the offense conduct be called from the grand jury as well as trial transcripts and not solely from the government's recital of overt acts.

Finally, the court's reliance on the PSR's reiteration of the overt acts as a basis for enhancement violates the basic unfairness articulated in the **Apprendi** and **Booker** prodigy and our **Casas I and Casas II** Opinions. Without limitation, the prejudice was amply illustrated by Probation's recital of overt conduct attributed to offenses evidence of which was deemed inadmissible during trial. Accordingly, in addition to the renewal of defendant's objections to the PSIR as set forth below, defendant reiterates his objections to the paragraphs cited above.

There were some PSR paragraphs with generic references and the use of the word "defendants" that usually refers to the group discussed in the same or preceding paragraphs.   For all of the paragraph's listed above, Pizarro is not named in any of those paragraphs listed above.    For example, par.'s 7, 8, etc.

There is the reference to "defendant" in some paragraphs that may implicate defendant Pizarro, i.e., 12, 13, that will be responded to as for the most part, there is no mention to any trial transcripts (T.T.) that would assist the

defendant Pizarro or this Honorable Court as to the exact drug-quantity that were reasonable foreseeable.   To a lesser extent, there are isolated dates will overt acts and facts, that were either not eventually admitted into evidence, either by an objection, and others that were not corroborated at trial, and nowhere is there any citation to the record of the contradicted statements between the witnesses, including, but not limited to: Perez and Thomas Martinez.

There are no references in the PSR that cites, differentiates, and questions the veracity and credibility determinations with citations to the record.   The only four other cooperating co-defendants that are cited therein are Wilson Rodriguez, Jose Velez Roman, Hector Martinez-Medina and Vivian Santiesteban.

The Sentencing Court did not follow any fact finding procedure as he was not familiar with the entire record which was mandated by the Casa II 425 F.3d at 56.   The District Court also refused to engage in credibility assessment and thus this Court should not afford any deferential review.   The Court's reliance of the PSIR that cited verbatim the indictment rather than the trial record, was erroneous and contrary to it mandate.

In addition to the above, the other Objections were regarding the paragraphs that actual state Pizarro's facts: to wit:

Page 6, par. 12:   Pizarro is not named, however, the singular of

"defendant" is used regarding that during June 1993, Israel Perez-Delgado received eight (8) kilos of cocaine from three (3) codefendants. The eight (8) kilos were shipped from Aguadilla, PR to JFK Airport in New York using two couriers (unnamed) provided by defendant. They were sold by other co-defendants. This is objected to as this testimony is not reliable, it is not credible based upon the lack of any specificity of who this couriers were, nor is there any corroboration for this allegation in the record for this testimony.

The following PSR Statements that mention Pizarro are broken down by the witnesses, as follows:

Testimony by Israel Perez Delgado-

Page 26-Par. 92-Pizarro worked at the airport and transported at least 200 kilos in 2-3 months

Page 26-27, Par. 93-Defendant celebrated at Empress Hotel delivery of 20 kiols insider air conditioner in July 1994. Both he and Thomas Martinez testified that defendant brought the weapon the date of the Monchito and Blanco murders.

Testimony by Thomas Martinez

Page 27-Par. 94-Pizarro commenced in November 1993 with Perez. Pizarro made approximately 4 trips between November and December 1993, 12 kilos in the first trip.

Par. 95-One of the crosses that Israel gave to the group in December 1993, later given to defendant.

Testimony by Wilson Rodriguez

Page 27-Par. 96-Israel Perez introduced him to Pizarro in September 1993, shortly after, Pizarro gave him 40 kilos to be delivered from Puerto Rico to Miami.

Testimony by Vivian Santiesteban

Page 27-Par. 97- She identified the defendant as a carrier.   He visited her at the beginning of 1994 complained of not being given a job.

Testimony by Hector Martinez Medina

Page 27-Par. 98-In March 1994, Pizarro asked him to deliver two bags to "Raton" in two different occasions.   First two contained 30-kilos.   One day he met with Pizarro who told him to return to work because he had some 3,500 kilos to move to the Continental U.S. (USPO did not have TT, information taken from Court of Appeals Opinion).

This was objected to as this conclusion is the precise reason that the Court of Appeals vacated the Sentence because of the lack of credibility determination of that same drug-quantity amount).

In addition, the Martinez-Medina TT referred to by the PSR failed to cite the record in its entirety as that testimony was subject to an objection, and the district

−55−

court trial judge sustained the objection as to the 15 kilos amount testified.     Said

testimony was stricken from the record.     See TT 08/19/99, p 79, L 20-25, p. 80, L

1-17,

> The Court:   Sustained.   The last part is stricken, members of the
> jury, as to the amount in each bag.   So what you can consider is what he
> says that bags contained cocaine.   As to the amount that he has testified to,
> that's stricken, the amount in those particular bags".

Page 28-Par. 99-Pizarro in Nov. 1993, asked to stash an AK-47 at house for

a few days.   Delivered 12 kilos with Pizarro to Israel's apartment in NY.

Par. 100-On December 15, 1999, Pizarro sent him to NY with two bags (no

quantity stated)

Par. 101-In beginning 1994, Pizarro asked to help make a hiding component

Par. 102-On March 21, 1994, Pizarro picked him up to deliver 81 kilos

Objected

Par. 103-It is admitted as it is found in the record.

The citations to the record and Trial Transcripts and to the entire record was

provided to the sentencing court by Appellant to demonstrate the credibility

determination that this District Court must make in determining the drug-quantity

for defendant Pizarro.   The Sentencing Memorandum and Objections cited were

not related to the defendant Pizarro, but are vital to this Court's determinations,

citations that were taken from other co-defendant's Sentencing Memorandum and objections as demonstrating the contradictory testimonies of these witnesses that this district court should have made credibility assessments.

Probation disregarded the fact that this was a multi-drug conspiracy with 60 co-defendants which thus requires individualized findings of drug type and quantity. Consequently, because there is no special verdict, the quantity or type of drug specific to each defendant was not known. The base offense level would necessarily vary depending upon attributions of quantity and type. The record demonstrates that it is possible that the jury convicted Pizarro on a portion of the total heroin quantum of 1.4 kilograms.

For guideline purposes, if defendant had been convicted for 1-3 kilograms of heroin, the base offense level would have been 32. §2D1.1. If below 1 kilogram, it would be no more than level 30. §2D1.1.

Defendant objected to a Base Offense Level (BOL) of 38.

**Page 30**, **Par. 110 - *Specific Offense Characteristics*** - Defendant objected to the adjustment to the guideline calculation pursuant to the §2D1.1 (b)( 1), on the basis of possession of weapons during the commission of the offense.

A two level enhancement pursuant to §2Dl.l(b)(l) requires the showing of "a nexus . . . between the weapon and the criminal act." *E.g.,* United States v. Pineda, 981 F.2d569, 573 (1st Cir. 1992).  Further, as there is not a separate charge under 21 U.S.C. §924(c), the enhancement urged pursuant to §2D1.1 (b)( 1) must be reviewed in terms of Application Note 3, which requires a "clearly

improbable" standard. See <u>United States v. Marrero-Ortiz</u>, 160 F.3d 768(1 [st] Cir. 1998). The mere presence of the weapon does not warrant imposition of an enhancement. *See* <u>United States v. Lagasse</u>, 87F.3d 18 (l[sl]Cir. 1996). Rather, there must be a finding that the presence of the weapon was a part of the activities in which a defendant was engaged. In this matter, while there is evidence that weapons were in the possession of other individuals, no such showing was made with respect to Pizarro only, rather other co-defendants that were with him.

Finally, defendant again objected to Probation's failure to prepare a PSR that properly presents its determination that a weapon enhancement applies.

**Page 30**, **Par. 115 - TOTAL OFFENSE LEVEL** - Defendant's total offense level should be 36 (38 based upon a finding of cocaine in excess of 150 kilograms minus 2 for acceptance), or lesser if this Court finds less than 150 kilograms, depending on the credibility determinations to be made at sentencing, and in the alternative, a 28 (30 based upon a finding of heroin below one kilogram minus two for acceptance). Thus defendant objects to Probation's assessment of 40, which incorporates the Base Offense Level of 38 plus 2 points for weapons enhancements, pursuant to Apprendi and Booker arguments, as well as those set forth in <u>Edwards v. United States,</u> 523 U.S. 511 (1998), together with the arguments concerning the preparation of the PSR, as set forth above.

**Page 33, <u>Education and Vocational Skills</u>**

**Page 33,        Par. 128** – 131. Evidence of numerous educational and vocational courses completed during his pre-sentence and his incarceration at MDC Guaynabo and other BOP facilities since 1996 were personally produced to

USPO Davila during their MDC interview as well as section 3553 (a) issues.    Id.
Despite the fact that some of the FCI Atlanta certificates and records were lost by
the Marshall Service, the compilation of the BOP Education Transcript have
supplemented in the record.    See Dk's 3235, 3236.

There was testimonial inmate and personal letters (including from his son)
that have been filed with this Court to complete the record that attest to the
religious instruction both received by and provided to other inmates by defendant
Pizarro. The partial names of all of the certificates and courses, the same has been
updated in the record with the Addendum, that contain an Exhibit List and a List
of BOP and external Certificates.    Id.

The PSR made reference to the April 25, 2011 Juan E. Cintron, Staff
Chaplain at the MDC express the following: "This inmate has demonstrated a
commitment towards his religious beliefs.   He has regularly attended religious
services and sets an example to other inmates on how to grow in their spiritual
journey. He has a desire to continue being a person of influence as he returns to
the community and help others to find the true meaning of life.   He completed
the course Houses of Healing and in the class he was helping other inmates to
apply these concepts in their lives while incarcerated.

**PAGE 37 - PART D. SENTENCING OPTIONS Page 28 - <u>Custody</u>**

**Page 37**, **Par. 139 -** Statutory Provisions - Defendant objected to sentencing
pursuant to subparagraph (A) of 21 U.S.C. §841 (b)( 1) as contrary to the dictates
of Apprendi and prodigy. The jury made no findings as to quantity or type thereby
requiring the sentencing court to look to subparagraph (C) that addresses a crime

without a finding of quantity or type.

**Page 37**, **Par. 140 -** Guideline Provisions - The total offense level discussed therein warrants a term of imprisonment. As set forth above, the guideline imprisonment range is subject to a determination of whether defendant is to be sentenced on the basis of heroin or cocaine. Defendant thus objects to sentencing based upon a total offense level of 40 and a criminal history category of II, with the guideline imprisonment range from 324 to 405 months of imprisonment.  These are in violations of e.g., Apprendi, Booker and Edwards.

**PAGE 40 - PART F. FACTORS THAT MAY WARRANT DEPARTURE**

**Page 40, Par. 152.** Defendant objected to that the probation officer had not identified any factors that may warrant a departure from the guidelines.  From a totality of circumstances and a reading of the entire record, a departure was warranted.  For many reasons stated in the Education and Vocational Skills, and the factors discussed below, said departure should be granted by this Honorable Court as outline in the Sentencing Memorandum and herein.

**PAGE 40 - PART G. FACTORS THAT MAY WARRANT A VARIANCE**

**Page 40, Par. 153-154.** Defendant accepted the general assertions by the USPO regarding that this Court may consider a variance in the case at bar in light of US v. Pepper and Title 18 U.S.C. Section 3553(a). This paragraph should be added to discuss below certain downward variances / departures that defendant urges apply to him.

−60−

1.        **Prolonged Detention at Pre-Sentence Facility**

Pizarro commenced his detention on February 22, 1996 and then incarceration in the District of Puerto Rico at MDC Guaynabo. It continued for sometime after his July 2002 sentencing.   He has returned on two occasions and his MDC stay during re-sentencing has had very limited opportunities.

As MDC is a pre-sentence detention facilities it does not contemplate inmate housing for extended periods of time, correctional services of health care, mental, spiritual, educational, vocational and work programs are limited, in comparison to post-sentence facilities. Inmate efforts towards rehabilitation are certainly not always encouraged or promoted. In addition, good time credit is limited to defendant's prejudice. These limitations place a hardship on an inmate which when endured over a prolonged period of time, is a circumstance not contemplated by the Sentencing Commission in the promulgation of the guidelines.

The Sentence Computation Manual-CCCA of the U.S. Department of Justice, BOP grants jail time credit towards a sentence as well as good conduct time credit.   While inmates obtain day to day jail time credit, good time credit calculations commence only upon being sentence.   See 18 U.S.C. section 3585(a) et seq., and 18 U.S.C. section 3624(b).   Thus, defendant has been deprived of 54 days per year for a period of some 8 years for a total of 432 estimated days, of good time credit, as a result of his prolonged pre-trial detention.

Accordingly, the hardship of prolonged pre-trial and pre-sentence detention, if sufficiently atypical "could serve as a basis for downward departure." See <u>Koon</u>

v. United States 116 S.Ct. 2035 (1996). See discussion in United States v. Francis, 129 F.Supp.2d 612, 616 (S.D.N.Y. 2001), citing United States v. Sutton, 973 F. Supp. 488, 491-494 (D.N.J. 1997). See also U.S. v. Hernandez-Santiago, 92 F.3d 97, 101, n.1 (2nd Cir. 1996)(three level downward departure for 22 months incarceration in a state facility).    In Sutton, the court concluded that "[u]nusual pretrial confinement [in length] can properly be considered by the sentencing court." While the court in Sutton decided not to depart, that case involved only a ten-month period of pretrial detention. This is far lesser in comparison to the likely unprecedented four years and four months detention before sentencing, and in subsequent visits, most recent since early 2010. Consequently, it cannot be clearer that this circumstance falls out of the heartland of cases and warrants a downward departure. Koon, supra. See United States v. Carty, 246 F.3d 191 (2dCir. 2001).


### 2.    Post-Arrest Rehabilitation

Defendant has been incarcerated since 1996 for conduct concerning the instant offense. He spent six years and four months before his first sentencing.

At the last September 26, 2006 Sentencing Hearing, the Honorable Judge Hector Laffitte, reduced the life sentence to thirty (30) years because held that **"[R]ehabilitation; I do not think you need it, I think you are rehabilitated".** (emphasis ours).    See SH 09/26/2006 Transcript.    See Dk. 2778.    The May 15, 2012 Sentencing Judge also found Pizarro's rehabilitated.    See A. A. p. 37, lines 1-6, P. 38, line 1.    While this prior reduced Sentence was vacated, this finding was persuasive for the District Court, and the sentence should not be increased as

argued by the government, but rather decreased, in light of the facts in this case with this particular defendant.

During the past sixteen years, two months, Pizarro had participated in hundreds of educational, religious and vocational programs and BOP activities that all of these different institutions had to offer. At all times, his participation was remarkable and he received numerous certificates. In addition, Pizarro volunteered in the institution without request for compensation and saved the institution unnecessary expenditures as a Preacher.  The Institutional reports praise his work, attitude and even request that he be considered for "any award or reduction in sentence he might be eligible for."

Defendant's personal conversion to faith demonstrated by his bible courses and services to inmates over a period of 16 plus years and in the face of the conditions of a pre-detention facility, are evidence of his post arrest rehabilitation and as such warrant a downward departure. Koon v. United States, 116 S. Ct. 2035 (1996); United States v. Bradstreet 207 F.3d 76, (1 st Cir. 2000); United States v. Core, 125 F.3d 74 (2d Cir. 1996); United States v. Barton, 76 F.3d 449 (2d Cir. 1996); United States v. Dyce, 975 F. Supp. 17 (D.D.C. 1997); United States v. Maier, 975 F.2d 944 (2d Cir. 1992); United v. Sally, 116 F.3d 76 (3d Cir. 1997); United States v. Brock, 108 F.3d31 (4th Cir. 1997).

### Sentence Disparity and Manipulation

The PSR at pages 3-4 clearly demonstrated that this Honorable Court

issued sentences for this 60 person indictment that range from 9, 24, 46, 57, 70, 87, 97, 108, 120, 121, 135, 188, months one as discharged and four acquittal. One other won a right to a new trial and then entered into a Plea Agreement and received on information and belief, 60 months. In subsequent sentences, this sentencing judge has reduced the sentences and should have less than the 280 month imprisonment in this case.

It is clear from the record that the leaders of the conspiracy and co-defendants, more culpable than defendant, received substantial and disproportionate sentences than the defendant. Accordingly, the issue of avoiding disparities among defendants with similar records convicted of similar conduct, i.e, disparate and manipulation of sentences, may be a basis for a downward departure under 18 U.S.C. section 3553(a)(2). It is more than that they got to the door first analysis, as justice requires that all of the defendants similar conduct and their sentences be viewed and are to be considered in the totality of the case so this factor is valid.

### 3.    Sufficient but not Greater than Necessary

The provisions of 18 U.S.C. section 3553(a) unconstrained by mandatory application of the USSG, are now preeminent in sentencing. United States v. Acosta-Luna, 2005 WL 1415565 (10th Cir. June 17, 2005). United States v. Cawthorn, 419 F.3d 793, 802 (8th Cir. 2005)(district court's duty is that it "shall

impose sentence sufficient but not greater than necessary".    The uniqueness of the

facts of the instant case, where a District Court has documented record and can see a

16 plus year old incarceration and the achievements and certificates awarded in

doing the lord's work in prisons is indeed a basis for consideration for no other

similar situated circumstances may ever be present again.    The imposition of 280

months sentence would be greater than necessary for defendant in this case under the

facts in the record.    Thus, a sentence less than twenty-years is warranted.    In

United States v. Robinson, 433 F,3d 31, 35 (1st Cir. 2006), our First Circuit held that

"After Booker, the Guidelines are merely advisory, which means that a district court

has considerable leeway to impose a sentence that falls outside of the range

suggested by the Guidelines.

   The sentencing judge imposed a base offense level of 38 attributing a drug

quantity of more than 150 kilograms of cocaine.    To this foundation, a two level

increase concerning firearms, for a total offense level of 40.    The court then

determined that defendant belonged in Criminal History category II and sentenced

him to 280 months imprisonment. The defense counsel preserved as advised the

Court that is well aware of the position of Mr. Pizarro concerning several issues in

this case as with the rehabilitation and the court rejected a motion to downwardly

depart on grounds of prosecutorial misconduct and a all host of post-trial arguments.    TT 07/09/2002 p. 3.

### The Court's Two-Level Enhancement Pursuant to 2D1.1(b)(1) Concerning Firearms Was Error

In order for a two level enhancement pursuant to §2D1.1(b)(1) of the sentencing guidelines to apply, "a nexus must be shown between the weapon and the criminal act." *E.g., United States v. Pineda,* 981 F.2d 569, 573 (1st Cir. 1992). Insofar as there was not a separate charge under 21 U.S.C. §924(c), imposition of the enhancement pursuant to §2D1.1(b)(1) required a "clearly improbable" standard in accord with Application Note 3. *See United States v. Marrero-Ortiz* 160 F3d 768 (1st Cir. 1998). The mere presence of the weapon did not call for application of the enhancement. *See United States v. Lagasse* 87 F3d 18 (1st Cir. 1996). Rather, the court was required to find that the presence of the weapon was a part of the activities in which defendant was engaged.

In this regard, it is noteworthy that the evidence at trial was contradictory never clearly established that Pizarro use of firearms. The entirety of the government's case for weapons enhancement was uncorroborated alleged witness testimony.

Jose Velez Roman testified on direct testimony that he was arrested on March 21, 1994 with 81 kilos of cocaine found on him in San Juan. TT08/12/99

p.137.    He stated that he got involved through Wee, who was Luis Angel Pizarro Morales.    TT08/12/99 p.145.    **He testified that he was asked to store a toy for him which was a AKA 47 rifle.  Id.    The Sentencing Court used this weapon for the enhancement without any credibility assessment that was error.**  (emphasis ours)

This witness also has testified that Pizarro did not tell him what type of work he was doing at the airport. Id at 146.   He also testified to that he knew him for twenty years but he had went to Pinones with Pizarro a week before Thanksgiving of '93.    TT08/12/99 p.147.

Accordingly, in this matter, while there is evidence that weapons were in the possession of certain individuals, these individuals were involved in separate conspiracies in which Pizarro had no involvement.

The court below nevertheless found by a preponderance that there was a nexus between a weapon abandoned by a member of a different conspiracy and Pizarro.   Therefore, there was no finding by a preponderance of the evidence as to a weapons enhancement on Pizarro.

The above enhancement determinations were, therefore, on the record adduced, plain error.

## CONCLUSION

For all of the foregoing reasons and arguments presented herein, the Judgment should be REVERSED and Appellant Pizarro be resentenced in accordance with the directions of this Honorable Court.

**Respectfully submitted,**

In Ponce, Puerto Rico this 13th day of February, 2013.

**s/ MAURICO HERNANDEZ ARROYO**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY**:   On February 13, 2013, two copies of the foregoing Brief and one copy of the Appendix have been sent by first class mail to Assistant United States Attorney Nelson Perez Sosa, Chardon Tower Suite 1211, 350 Carlos Chardón Ave., Hato Rey, Puerto Rico 00918 and to Appellant Angel Luis Pizarro-Morales.

In Ponce, Puerto Rico, on the 13th day of February, 2013.

BY: /s Mauricio Hernández Arroyo

MAURICIO HERNANDEZ ARROYO

## <u>CERTIFICATE OF COMPLIANCE</u>

I, MAURICIO HERNANDEZ ARROYO, attorney for appellant Angel Luis Pizarro Morales, do hereby certify that on this present brief complies with Fed. R. App. P. Rule 32(a) for Brief and Addendum that the typeface is Times New Roman, 14 point and the Brief contains 14,000 words as counted automatically by WordPerfect Office and also complies with Local Rule 31.1 of the Court of Appeals for the First Circuit by submission of the Brief on a disk in word perfect format.


BY: /s Mauricio Hernández Arroyo

MAURICIO HERNANDEZ ARROYO

# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIRST CIRCUIT

## APPEAL NO. 12-1759

UNITED STATES OF AMERICA,

APPELLEE,

v.

ANGEL LUIS PIZARRO, A.K.A. WEE,

APPELLANT

---

## APPELLANT'S ADDENDUM TO BRIEF

---

**LAW OFFICES OF**
**MAURICIO HERNANDEZ ARROYO, ESQ.**
USCA-1st Cir. No. 42462
Attorney for Appellant
818 Avenue Hostos, Suite B
Playa de Ponce, Puerto Rico 00716.
(787) 597-4815
e-mail: lawofficesmhernandez@gmail.com

## ADDENDUM TABLE OF CONTENTS

1.    Second Amended Judgment.............................................................1-5

2.    Minutes May 15, 2012 Sentencing Hearing.....................................6

AO 245C   (Rev. 06/05) Amended Judgment in a Criminal Case   Case 3:95-cr-00405-GAG-BJM   Document 3281   Filed 05/17/12   Page 1 of 5   (NOTE: Identify Changes with Asterisks (*))
Sheet 1

# UNITED STATES DISTRICT COURT

FOR THE _____    District of    PUERTO RICO

### SECOND AMENDED JUDGMENT IN A CRIMINAL CASE

UNITED STATES OF AMERICA

**V.**

ANGEL LUIS PIZARRO-MORALEZ

**Date of Original Judgment:**   September 28, 2006
**(Or Date of Last Amended Judgment)**

**Reason for Amendment:**

X  Correction of Sentence on Remand (18 U.S.C. 3742(f)(1) and (2))

☐  Reduction of Sentence for Changed Circumstances (Fed. R. Crim. P. 35(b))

☐  Correction of Sentence by Sentencing Court (Fed. R. Crim. P. 35(a))
    Correction of Sentence for Clerical Mistake (Fed. R. Crim. P. 36)

Case Number:    3:95-CR-405-010 (GAG)
USM Number:    38378-054
MAURICIO HERNANDEZ-ARROYO, ESQ.
Defendant's Attorney

☐  Modification of Supervision Conditions (18 U.S.C. §§ 3563(c) or 3583(e))

☐  Modification of Imposed Term of Imprisonment for Extraordinary and Compelling Reasons (18 U.S.C. § 3582(c)(1))

☐  Modification of Imposed Term of Imprisonment for Retroactive Amendment(s) to the Sentencing Guidelines (18 U.S.C. § 3582(c)(2))

☐  Direct Motion to District Court Pursuant  ☐  28 U.S.C. § 2255 or
    ☐  18 U.S.C. § 3559(c)(7)

    Modification of Restitution Order (18 U.S.C. § 3664)

**THE DEFENDANT:**

   pleaded guilty to count(s)   _____

☐  pleaded nolo contendere to count(s)   _____
   which was accepted by the court.

X  was found guilty on count(s)   One and Two on  December 14, 1999.
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 21 USC §§ 841(a)(1), 846 and 18 USC § 2 | Conspiracy to possess with the intent to distribute 9,445 kilograms of cocaine. A Class "A" felony. Unlawful possession with the intent to distribute approximately 81 kilograms of cocaine, aiding and abetting. A Class "A" felony. | March, 1995 | One & Two |

      The defendant is sentenced as provided in pages 2 ____5____ of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐  The defendant has been found not guilty on count(s)   _____

   Count(s)  _____  is   are dismissed on the motion of the United States.

      It is ordered that the defendant must notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

May 15, 2012
Date of Imposition of Judgment

s/Gustavo A. Gelpí
Signature of Judge

Gustavo A. Gelpí, U.S. District Judge
Name and Title of Judge

May 17, 2012
Date

AO 245C    (Rev. 06/05) Amended Judgment in a Criminal Case       Case 3:95-cr-00405-GAG-BJM    Document 3281    Filed 05/17/12    Page 2 of 5
Sheet 2 — Imprisonment                                                                                    (NOTE: Identify Changes with Asterisks (*))

Judgment — Page ___2___ of ___5___

DEFENDANT:          ANGEL LUIS PIZARRO-MORALEZ
CASE NUMBER:     3:95-CR-405-010 (GAG)

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a
total term
of : ::          TWO HUNDRED AND EIGHTY (280) MONTHS AS TO BOTH COUNTS.

The court makes the following recommendations to the Bureau of Prisons:

X    The defendant is remanded to the custody of the United States Marshal.

The defendant shall surrender to the United States Marshal for this district:

at _____    a.m.    p.m.    on _____ .

☐    as notified by the United States Marshal.

☐    The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☐    before 2 p.m. on _____ .

☐    as notified by the United States Marshal.

☐    as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

_____

_____

_____

Defendant delivered on _____    to _____

a _____ with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AO 245C    (Rev. 11/89 Amended Judgment in a Criminal Case   Document 3281   Filed 05/17/12   Page 3 of 5
Sheet 3 — Supervised Release                                                    (NOTE: Identify Changes with Asterisks (*))

Judgment—Page ___3___ of ___5___

DEFENDANT:       ANGEL LUIS PIZARRO-MORALEZ
CASE NUMBER:     3:95-CR-405-010 (GAG)

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of    FIVE (5) YEARS AS TO EACH COUNT TO BE SERVED CONCURRENTLY WITH EACH OTHER. SAID TERM TO BE SERVED UNDER THE FOLLOWING TERMS AND CONDITIONS :

    The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state, or local crime.

The defendant shall refrain from any unlawful use of a controlled substance and shall submit to a drug test within 15 days of release from imprisonment, and thereafter submit to a random test, not to exceed 104 samples per year in accordance with the Drug Aftercare Program Policy of the U.S. Probation Office approved by this Court. If any such samples detects substance abuse, the defendant shall participate in a drug treatment program (in patient or out patient) in accordance with such policy. The defendant is required to contribute to the cost of services rendered (co-payment) based on the ability to pay or availability of third party payments, as approved by the Court.

    The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

X    The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if applicable.)

X    The defendant shall cooperate in the collection of DNA as directed by the probation officer, pursuant to the Revised by DNA Collection Requirements, and Title 18, US Code § 3563 (a) (9). (Check, if applicable.)

☐    The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer. (Check, if applicable.)

☐    The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

    If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

    The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1)    the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)    the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3)    the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)    the defendant shall support his or her dependents and meet other family responsibilities;

5)    the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)    the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)    the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8)    the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)    the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10)    the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)    the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)    the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13)    as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record, personal history, or characteristics and shall permit the probation officer to make such notifications and confirm the

AO 245C    (Rev. 08/96) Amended Judgment in a Criminal Case
Sheet 3A — Supervised Release                                                    (NOTE: Identify Changes with Asterisks (*))

Judgment—Page ___4___ of ___5___

DEFENDANT:        ANGEL LUIS PIZARRO-MORALEZ
CASE NUMBER:    3:95-CR-405-010 (GAG)

## ADDITIONAL SUPERVISED RELEASE TERMS

HAVING CONSIDERED THE DEFENDANT'S FINANCIAL CONDITION, THE COURT FINDS THAT HE DOES
NOT HAVE THE ABILITY TO PAY A FINE .

AO 245C    (Rev. 06/05) Amended Judgment in a Criminal Case    Case 3:95-cr-00405-GAG-BJM    Document 3281    Filed 05/17/12    Page 5 of 5
          Sheet 5 — Criminal Monetary Penalties                                                    (NOTE: Identify Changes with Asterisks (*))

|  |  | Judgment — Page __5__ of __5__ |
|---|---|---|

DEFENDANT:         ANGEL LUIS PIZARRO-MORALEZ
CASE NUMBER:       3:95-CR-405-010 (GAG)

# CRIMINAL MONETARY PENALTIES

The defendant must pay the following total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** | $ 100.00 | $ 0.00 | $ 0.00 |

☐   The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case* (AO 245C) will be
     entered after such determination.

☐   The defendant shall make restitution (including community restitution) to the following payees in the amount listed below.

     If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise
     in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid
     before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| **TOTALS** | $ _____ | $ _____ |  |

☐   Restitution amount ordered pursuant to plea agreement  $ _____

☐   The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the
     fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject
     to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐   The court determined that the defendant does not have the ability to pay interest, and it is ordered that:

     ☐   the interest requirement is waived for    ☐  fine    ☐  restitution.

     ☐   the interest requirement for the    ☐  fine    ☐  restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or
after September 13, 1994, but before April 23, 1996.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO

<u>MINUTES OF PROCEEDINGS</u>                           DATE : MAY 15, 2012

HONORABLE GUSTAVO A. GELPI, U.S. DISTRICT JUDGE

COURTROOM DEPUTY: CARLOS J. RODRIGUEZ           CR. 95-405-10 (GAG)

COURT REPORTER : DIANE BREAZ

INT : MARY JO SMITH                         USPO : BRENDA DAVILA

=====================================================================

                                          <u>Attorneys:</u>

UNITED STATES OF AMERICA          AUSA- WARREN VAZQUEZ

v.

ANGEL LUIS PIZARRO-MORALES        MAURICIO HERNANDEZ

=====================================================================

The defendant is present in court. He is ___X___ Under custody. _____ On bond.

        CASE CALLED FOR RE-SENTENCE .

**IT IS THE JUDGMENT OF THE COURT** as to count (s) : <u>One & Two</u> of the superseding

indictment.

Term of Imprisonment of : <u>280</u> as to both counts.

Supervised release term of : <u>5</u> years as to each count to be served concurrently with each other.

 Fine: <u>-none-</u> Restitution : <u>-none-</u> Special monetary assessment: <u>$100.00.</u>

 __X__ All terms and conditions are specified in the judgment form.

The defendant is advised of his right to appeal, etc.

                        <u>S/ Carlos J. Rodríguez</u>
                           Deputy Clerk